CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rafael Arroyo, Jr.**, | **Case No**. |
| Plaintiff, | |
| v. | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| **Blake Megdal**; **Taylor Megdal**; **Megdal Monrovia, LLC**, a California Limited Liability Company; **Northern California Investors III, LLC**, a California Limited Liability Company; **Notivel Enterprises, Inc.**, a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Rafael Arroyo, Jr. complains of Defendant Blake Megdal; Taylor Megdal; Megdal Monrovia, LLC, a California Limited Liability Company; Northern California Investors III, LLC, a California Limited Liability Company; Notivel Enterprises, Inc., a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

1

Complaint

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility.

2.  Defendant Blake Megdal owned the real property located at or about 5920 Sunset Blvd., Hollywood, California, in August 2018.

3.  Defendant Taylor Megdal owned the real property located at or about 5920 Sunset Blvd., Hollywood, California, in August 2018.

4.  Defendant Megdal Monrovia, LLC owned the real property located at or about 5920 Sunset Blvd., Hollywood, California, in August 2018.

5.  Defendant Northern California Investors III, LLC owned the real property located at or about 5920 Sunset Blvd., Hollywood, California, in August 2018.

6.  Defendant Blake Megdal owns the real property located at or about 5920 Sunset Blvd., Hollywood, California, currently.

7.  Defendant Taylor Megdal owns the real property located at or about 5920 Sunset Blvd., Hollywood, California, currently.

8.  Defendant Megdal Monrovia, LLC owns the real property located at or about 5920 Sunset Blvd., Hollywood, California, currently.

9.  Defendant Northern California Investors III, LLC owns the real property located at or about 5920 Sunset Blvd., Hollywood, California, currently.

10. Defendant Notivel Enterprises, Inc. owned Arby's located at or about 5920 Sunset Blvd., Hollywood, California, in August 2018.

11. Defendant Notivel Enterprises, Inc. owns Arby's ("Restaurant") located at or about 5920 Sunset Blvd., Hollywood, California, currently.

12. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of,

Complaint

and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

13. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

14. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

15. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

16. Plaintiff went to the Restaurant in August 2018 to eat.

17. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

18. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

19. Unfortunately, even though there was a parking space marked and reserved for persons with disabilities in the parking lot of the Restaurant

1  during Plaintiff's visit, the parking space was not van accessible.

2  20. The parking stall measured 120 inches in width while the access aisle
3  measured about 46 inches in width. This is not accessible, let alone van
4  accessible.

5  21. In addition to not having an accessible, compliant parking space for
6  persons with disabilities, the parking stall and access aisle were not level with
7  each other. The parking stall and access aisle had cross slopes and running
8  slopes greater than 2.1%.

9  22. Currently, the parking stall and access aisle are not level with each other.

10  23. Paths of travel are another one of the facilities, privileges, and
11  advantages offered by Defendants to patrons of the Restaurant.

12  24. Unfortunately, the walkway leading to the entrance of the Restaurant
13  had cross slopes of as much as 5.7%. This is inaccessible to plaintiff.

14  25. Defendants have failed to maintain in operable working condition those
15  features of facilities and equipment that are required to be readily accessible to
16  and usable by persons with disabilities at the Subject Property.

17  26. Plaintiff personally encountered this barrier.

18  27. This inaccessible facility denied the plaintiff full and equal access and
19  caused him difficulty, discomfort, and embarrassment.

20  28. Restrooms are also one of the facilities, privileges, and advantages
21  offered by Defendants to patrons of the Restaurant.

22  29. The toilet stall is improperly configured and too small for wheelchair
23  users, measuring 54 inches in width and 119 inches in depth.

24  30. The plumbing underneath the sink is not wrapped to protect against
25  burning contact.

26  31. Plaintiff plans to return and patronize the Restaurant but is deterred
27  from visiting until the defendants remove the barriers.

28  32. The defendants have failed to maintain in working and useable

Complaint

conditions those features required to provide ready access to persons with disabilities.

33. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

34. For example, there are numerous paint/stripe companies that will stripe a level, accessible parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full compliance with federal and state access standards.

35. Insulation can be installed under the sink at a cost of no more than $25.

36. Plaintiff is deterred from returning and patronizing the Restaurant because of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Restaurant as a customer once the barriers are removed.

37. Given the obvious and blatant nature of the violations and barriers alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

5

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

38. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

39. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a.  A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals

Complaint

with disabilities. 42 U.S.C. § 12183(a)(2).

40. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, i.e., having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

41. Here, the lack of a van parking space is a violation of the law.

42. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

43. Here the failure to provide level parking is a violation of the law.

44. Nowhere shall the cross slope of an accessible route exceed 2.1%. 1991 Standards §4.3.7. 2010 Standards § 403.3.

45. Here, the slopes along the walkways exceeded the levels allowed by law.

46. Where a toilet stall is provided in a restroom in existing facilities, the size and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted)

7

Complaint

or 69 inches (if the toilet is floor mounted) and provide front transfer grab bars or (2) be at least 48 inches wide by at least by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b).

47. Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

48. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

49. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

50. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

51. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

52. Given its location and options, plaintiff will continue to desire to patronize the Restaurant but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

53. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations,

Complaint

advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

54. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

55. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

56. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: August 23, 2018          CENTER FOR DISABILITY ACCESS

By: _____

        Chris Carson, Esq.
        Attorney for plaintiff

10

Complaint